IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CP HOLDINGS, INC., ) | Case No. 03-43750-ABF |
| ) | |
| Debtor. ) | |
| ) | |
| CALIFORNIA PUBLIC EMPLOYEES ) | Adversary No. 05-4189-ABF |
| RETIREMENT SYSTEM ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JANICE STANTON, CHAPTER 7 ) | |
| TRUSTEE, and CP HOLDINGS, INC. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This is a declaratory judgment action by Plaintiff California Public Employees' Retirement System ("CALPERS') for a determination that it holds a valid lien on the Debtor's claim in a separate bankruptcy proceeding. The Chapter 7 Trustee filed a counterclaim in this action, seeking a determination that CALPERS does not hold a valid lien, and that the claim is an asset of this bankruptcy estate. The pending matters are a motion of CALPERS for judgment on the pleadings, and a motion by the Trustee for summary judgment. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For reasons to be stated, judgment

will be entered in favor of the Plaintiff.

There is no factual dispute here. Debtor CP Holdings, Inc. borrowed $12 million, which loan was secured in part by three parcels of improved real estate in the states of Missouri, Michigan and Maryland. The debt was also secured by Assignments of Lease and Rents on the properties. CALPERS now holds the note secured by such collateral. The three properties were leased to K-Mart Corporation, which filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Northern District of Illinois in 2002, and rejected the leases pursuant to Section 365 of the Bankruptcy Code.[1] Thereafter, on June 13, 2003, CP Holdings filed a Chapter 11 bankruptcy case, which was subsequently converted to Chapter 7. CALPERS, as the holder of the Assignments of Lease and Rents, filed proofs of claim in the K-Mart bankruptcy case for lease rejection damages, which are allowable pursuant to § 502(b)(6) of the Bankruptcy Code.[2] The CALPERS claims have now been allowed in the K-Mart case in the total amount of $3,472,519.86, with the settlement proceeds being held pending resolution of this proceeding.[3] CP Holdings also filed claims for the same lease rejection damages in the K-Mart bankruptcy case, but those claims, which duplicate the CALPERS claims, have not been allowed.

The three mortgages contain similar or identical language to the effect that CP conveys to the holder of the note, now CALPERS, all of its "estate, right, title and interest" in the Properties and all of its

> interest as lessor in and to all leases of the said premises, or any part thereof, heretofore or hereafter made and entered into by Mortgagor during the life of this

---

[1] 11 U.S.C. § 365.

[2] 11 U.S.C. § 502(b)(6).

[3] Case No. 03-43750, Doc. #423.

> mortgage or any extension or renewal hereof including but not limited to the Lease made and entered into as of October 10, 1988 (as such may be amended and supplemented from time to time, the Lease) between Mortgagor, as landlord, and K Mart Corporation, as tenant (K Mart), and all rents, issues, proceeds and profits accruing and to accrue from the premises (which are pledged primarily and on a parity with the real estate and not secondarily).

The mortgages also convey to the holder of the note "any other claim at law or in equity" relating to the Properties. The note secured by those mortgages was also secured by Assignments of Lease and Rents (the "Lease Assignments") on the Properties. The Lease Assignments contain similar or identical language to the effect that CP conveys "all rights of the lessor under all leases affecting the Mortgaged Premises . . .and all rents, income and other payments which may now or hereafter be or become due or owing under the Leases." The Lease Assignments clearly state their purpose: "It is intended hereby to establish a present and complete transfer of all the Leases and all rights of the lessor thereunder and all rents, and other payments arising thereunder. . . ."

CALPERS asserts here that since its Assignment of Rents gave it a valid lien on all rents from the three properties, it holds a valid lien on the proofs of claim for lease rejection damages. The Trustee asserts that, once the leases were rejected by K-Mart, those lease rejection damages are treated as a general intangible, as to which a UCC-1 financing statement must be filed, instead of an Assignment of Rents. Since CALPERS did not file a UCC-1, the Trustee argues, it did not hold a valid lien on such proofs of claim as of the date of the filing of the CP Holdings bankruptcy case, so the Trustee takes the proceeds of such claims free of any interest of CALPERS.[4]

Under UCC § 9-102(a)(42), the term "general intangible" refers to personal property,[5] and

---

[4] 11 U.S.C. § 544.

[5] UCC § 9-102(a)(42) provides that:

3

does not apply to assignments of rents and leases of real property. Interests in the rents and leases of real property are specifically excluded from Article 9 of the UCC.[6] Under UCC § 9-104(j), effective at the time of the execution and filing of the Assignments of Lease and Rents in 1989, the "transfer of an interest in or lien on real estate, <u>including a lease or rents thereunder</u>" was expressly excluded from the scope of Article 9 under UCC § 9-104(j).[7]

The crux of the Trustee's argument is that, when K-Mart rejected the leases and surrendered the properties to CP Holdings, such action effected a termination of such leases, and that any amounts due thereafter were for breach of contract, not rents. Therefore, the Trustee argues, such breach of contract damages are not excluded from Article 9. In support, the Trustee relies principally on cases from the three states involved here, to the effect that if a landlord accepts a tenant's surrender of the premises, the tenant is released from all liability for unaccrued rent. For example, in *Circuit City Stores, Inc. v. Rockville Pike Joint Venture Limited Partnership*,[8] a tenant

---

"General intangible" means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter of credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software.

[6] *In re Standard Conveyor Co.*, 773 F.2d 198, 204 (8th Cir. 1985); *In re Bristol Assocs., Inc.*, 505 F.2d 1056, 1064 (3rd Cir. 1974); *In re SLC Ltd. V*, 152 B.R. 755, 756 (Bankr. D. Utah 1993).

[7] UCC § 9-104, entitled "Transactions Excluded From Article," provides that: "[t]his Article does not apply. . . (j) except to the extent that provision is made for fixture in Section 9-313, to the creation or transfer of an interest in or lien or real estate, including a lease or rents thereunder. . . ." (emphasis added). Under Revised Article 9, adopted in Maryland, Michigan and Missouri, effective on July 1, 2001, the exclusion from the scope of Revised Article 9 of "the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder" is relocated to § 9-109(d)(11). See Mo. Rev. Stat. § 400.9-109(d)(11).

[8] 829 A.2d 976 (Md. Ct. App.2003).

had abandoned the premises. In response, the landlord relet the premises, and allowed the new tenant to demolish the existing building and replace it with a larger one. The court stated that the key issue was whether, by allowing the new tenant to demolish the building, the landlord had "somehow forfeited or waived its right to continued rent damages" from the tenant.[9] At common law, the court explained, if a tenant abandoned the premises, and the landlord re-entered the premises for its own benefit, these actions were treated as an agreement to surrender the lease, thereby terminating the tenant's obligation to pay rent. But that was not an issue that the Maryland court needed to decide, because the landlord had expressly agreed to accept surrender of the lease by notifying the tenant that it was "terminating the Lease effective immediately."[10]

In the Missouri case relied upon by the Trustee,[11] the court also considered whether a landlord and tenant had agreed to a surrender of the lease, thereby terminating the tenant's obligation to pay rent. After the tenant had abandoned the premises, the landlord relet them. However, under the terms of the lease, the reletting was for the benefit of the lessee, so that action did not constitute an acceptance by the landlord of the surrender of the lease. And, in the Michigan case cited by the Trustee,[12] a tenant had repudiated a lease for a parking garage, after which the landlord had accepted possession, refused a month-to-month tenancy with the tenant, re-entered and operated the business, and failed to protest the abandonment immediately. The tenant, Ampco, argued that these actions amounted to an acceptance of its surrender of the lease. Rather than sue for rent, the Plaintiff had

---

[9] *Id.* at 988.

[10] *Id.* at 989.

[11] *Crow v. Kaupp*, 50 S.W.2d 995 (Mo.1932).

[12] *Winshall v. Ampco Auto Parks*, 417 F.Supp. 334 (E.D.Mich.1976).

chosen to bring a contract action for damages flowing from the breach of the lease agreement. The court noted that, therefore, any precedent concerning surrender of a lease was not applicable.[13] In doing so, however, the court also stated that even if it had been an action for rent, "it is doubtful that the facts on record would show Ampco accepted surrender by operation of law."[14]

The state cases cited by CP Holdings may well stand for the proposition that, under certain circumstances, a tenant and landlord may take actions which are found to constitute an agreement to surrender the premises and terminate their lease. But even if that is the law, it is simply not what happened here. K-Mart vacated these premises because it used its own bankruptcy proceedings to reject these leases. CP Holdings had no choice but to honor that rejection. Therefore, there was no agreement to surrender the premises and terminate the lease.

The Trustee cites no cases holding that a lease rejection damages claim constitutes a general intangible, as opposed to a claim for rents. Indeed, that position was rejected by a bankruptcy court in *In re SLC Ltd. V*[15]. There, the court considered whether funds from the settlement of litigation arising from the breach of a real property lease were general intangibles, as opposed to rents and profits subject to a mortgage. The court rejected the debtor's contention that its filing of suit against the tenant and reducing the claim for rents to one for liquidated damages transformed the rent assignment into something other than real property. The court held that the method used by the landlord to collect the rents due and owing to it "cannot change the fundamental characteristic of

---

[13] *Id.* at 337.

[14] *Id.* at 336.

[15] 152 B.R. 755 (Bankr. D. Utah 1993).

6

income derived from rental of real property."[16] The debtor's argument, the court noted, would convert a "creditor from a secured position to an unsecured position as a result of the debtor's independent decision to file a lawsuit [to collect the rents]."[17]

In sum, I hold that there was no agreement between CP Holdings and K-Mart to surrender the premises and terminate the lease. In any event, I hold that the proof of claim filed by CALPERS, and allowed in the K-Mart bankruptcy proceedings, was for rents due CP Holdings, upon which CALPERS holds a valid Assignment of Rents. A separate order will be entered directing the Clerk of Court to enter judgment in favor of Plaintiff on the Complaint, and in favor of Plaintiff on the Counterclaim.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: March 22, 2006

Copy to: David D. Ferguson
Kristie Remster Orme
R. Pete Smith

---

[16] *Id*. at 766.

[17] *Id*.